**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN  DIVISION**

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                      No. 4:04CR00291-13 JLH

CURTIS WAHEED RASOOL                                              DEFENDANT

**<u>OPINION AND ORDER</u>**

Curtis Waheed Rasool has filed a petition pursuant to 28 U.S.C. § 2255 to vacate, set aside,

or correct his sentence.  Rasool argues that his sentence was erroneously based on a determination

that he was a career offender and that his lawyer was ineffective.  For reasons that will be explained,

Rasool's arguments are without merit.

**I.**

Pursuant to a written plea agreement, Rasool entered a plea of guilty to one count of a

conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846.  As was acknowledged in the

plea agreement, the government had filed a notice of enhancement of the statutory penalties pursuant

to 21 U.S.C. § 851, so the statutory term of imprisonment was not less than 20 years and not more

than life pursuant to 21 U.S.C. § 841(a)-(b) and § 846.  The plea agreement stipulated that Rasool

was responsible for at least 50 grams but less than 150 grams of crack cocaine, so the base offense

level under the guidelines would be 32 pursuant to section 2D1.1(c); that Rasool would receive a

three-level role enhancement for his role in the offense pursuant to section 3B1.1(b); and that, if

certain conditions were met, Rasool would be eligible for a three-point reduction for acceptance of

responsibility.  The plea agreement included a provision for cooperation pursuant to which the

government would, in its sole discretion, file a motion for reduction of Rasool's sentence not to

exceed 50 percent from the low end of the guideline range.  Finally, the plea agreement provided that the Court was not bound by the stipulations between the parties.

Neither party objected to the presentence report, which determined that Rasool was a career offender pursuant to section 4B1.1 of the sentencing guidelines.  Rasool's base offense level was therefore 37 according to the presentence report, not 32 as stipulated in the plea agreement.  He received a three-level reduction for acceptance of responsibility, so his final offense level was 34. Rasool's criminal history score was 18, so his criminal history was category VI.  Based on an offense level of 34 and a criminal history category of VI, the guideline imprisonment range for Rasool's sentence was 262-327 months.  The government moved for a downward departure of 40 percent from the low end of the guideline range because of Rasool's cooperation.  The Court granted the motion for downward departure and sentenced Rasool to 159 months imprisonment.

Rasool appealed his sentence.  The Eighth Circuit affirmed.  *United States v. Rasool*, 283 F. App'x 418 (8th Cir. 2008).

## II.

Rasool alleges the following grounds for habeas relief:

Ground One: The district court imposed a sentence that was both procedurally and substantively unreasonable;

Ground Two: The court incorrectly applied the sentencing guidelines resulting in an impermissible application of a sentence enhancement under section 4B1.1 of the guidelines;

Ground Three: The guilty plea was entered involuntarily due to misinformation of the consequences of the plea and the defendant being uninformed as to the essential elements of the crime; and

Ground Four: The petitioner received ineffective assistance of counsel at his preliminary

stage, plea negotiations, and appeal.

**A.    RASOOL'S ARGUMENTS THAT HIS SENTENCE WAS IMPROPER ARE WITHOUT MERIT.**

Rasool's first and second grounds for relief are attacks on the sentence.  He argues that the

enhancement for being a career criminal was improper because one of the convictions counted in the

presentence report toward determining eligibility for the enhancement was one in which he received

a suspended sentence, probation, or boot camp;[1] that two of his prior convictions should have been

consolidated for purposes of calculating his criminal history; and that one of his prior convictions

was for possession with intent to deliver a controlled substance, which, he argues, is not a predicate

offense for career offender purposes.

   *1.    The conviction that resulted in a suspended sentence.*

The government contends that Rasool's arguments relating to his sentence were litigated in

his direct appeal and therefore cannot form a basis for habeas relief.  A claim that was presented on

direct appeal cannot be reconsidered on collateral review.  *United States v. Davis*, 406 F.3d 505, 511

(8th Cir. 2005); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992).  The Court has reviewed

briefs filed in the Eighth Circuit, as well as the opinion of that court, to determine whether the issues

raised in Rasool's section 2255 petition were litigated on direct appeal.  The brief filed by the United

States on direct appeal stated the issues as follows:

   I.  Did the district court err in determining that Rasool was a career offender under
   U.S.S.G. § 4B1.1?

---

   [1] Rasool's brief says he "was given a suspended sentence, *i.e.*, probation/boot camp."
The presentence report says that he received a suspended sentence.

II.  Did the United States submit a sufficient factual basis regarding the quantity of crack cocaine for which the defendant was held responsible?

III.  Was the defendant's sentence reasonable under *United States v. Booker* and the statutory factors set forth in Title 18, United States Code, Section 3553(a)?

The opinion of the Eighth Circuit noted that Rasool had failed to preserve his argument regarding the drug conviction for which he received a suspended sentence, probation, or boot camp but then addressed the issue under the plain error standard.  The court stated:

> We conclude that the district court—in arriving at the starting point for its downward departure—did not plainly err in its Guidelines calculations, including the section 4B1.1 career-offender enhancement based in part on Rasool's 1996 Arkansas drug conviction, and that the section 4B1.1 enhancement was proper notwithstanding the fact that his conviction resulted in a suspended sentence.  *See* U.S.S.G. § 4B1.2(b) (as used in § 4B1.1, term "controlled substance offense" means offense under federal or state law, punishable by imprisonment for term exceeding 1 year, that prohibits, inter alia, possession of controlled substance with intent to distribute), comment. (nn. 1 & 2) ("prior felony conviction" includes federal or state conviction for offense punishable by imprisonment for term exceeding 1 year, regardless whether such offense is specifically designated as felony and regardless of actual sentence imposed; offense of conviction is focus of inquiry); *United States v. Chauncey*, 420 F.3d 864, 878 (8th Cir. 2005) (failure to object to fact of conviction is considered admission of conviction for purposes of determining career-offender status); *cf. United States v. Ball*, 499 F.3d 890, 899 (8th Cir. 2007) (defendant's prior Missouri felony drug conviction which resulted in suspended sentence qualified to trigger enhancement under § 841(b)(1)(A)).
>
> Having reviewed the record independently under *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we find no nonfrivolous issues.

*Rasool*, 283 F. App'x at 419-20.  The issue of whether Rasool was a career offender was litigated on direct appeal, specifically the issue of whether the prior conviction that resulted in Rasool receiving a suspended sentence was properly counted toward the determination that he was a career offender.  Because that issue was raised and litigated on direct appeal, it cannot form the basis for habeas relief.

2.      *Two sentences imposed on the same day.*

Rasool's argument that two of his prior convictions should have been consolidated for purposes of calculating his criminal history was not directly addressed by the Eighth Circuit on direct appeal, so the Court will address the merits of that issue. It appears that Rasool's argument is based on the fact that on November 21, 1997, Rasool pled guilty and was sentenced in two cases in Pulaski County Circuit Court. The presentence report shows that Rasool was arrested on July 10, 1996, for an offense that occurred on July 1, 1996. He then committed another offense on October 20, 1996, for which he was arrested on November 28, 1996. Rasool was sentenced for both offenses on November 21, 1997. Even though Rasool was sentenced for both offenses on the same date, those offenses count as separate convictions under the sentencing guidelines because they were separated by an intervening arrest. *See* U.S. SENTENCING GUIDELINES MANUAL § 4A1.2, comment. (n.3) (2004); *United States v. McKay*, 431 F.3d 1085, 1095 (8th Cir. 2005). The Court correctly counted those convictions as separate convictions.

3.      *Possession with intent to deliver.*

Rasool's third argument—that possession of a controlled substance with intent to deliver is not a predicate offense for career offender purposes—is without merit. Rasool says that his conviction was for violation of section 5-64-401 of the Arkansas Code, which makes it unlawful "to manufacture, deliver, or possess with intent to . . . deliver a controlled substance," whereas the sentencing guidelines define the predicate offenses to include "the manufacture, import, export, distribution or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(b). Rasool's argument seems to be that "possession with intent to

deliver" is different from "possession with intent to distribute."  The law does not distinguish between delivery and distribution of a controlled substance, which appears to be the argument Rasool is attempting to make.  *See* 21 U.S.C. § 802(ii) (2006) ("The term 'distribute' means to deliver . . . ."); *United States v. Ford*, 509 F.3d 714, 717 (5th Cir. 2007) ("[P]ossession . . . with intent to deliver" is indistinguishable from "possession with intent to distribute."); *United States v. Garcia*, 48 F.3d 1225 (8th Cir. 1995) (holding that the term "distribute or dispense" means "to deliver" a controlled substance); BLACK'S LAW DICTIONARY 543 (9th ed. 2009) ("distribute" means "to deliver").

Rasool cites *United States v. Gonzales*, 484 F.3d 712 (5th Cir. 2005), a case in which the Fifth Circuit held that a drug conviction under a Texas statute that included "offering to sell" as an offense was not a "drug-trafficking" conviction pursuant to section 2L1.2(b)(1) of the sentencing guidelines, which at that time defined "drug-trafficking offense" in a manner identical to section 4B1.2.[2]  He also cites *United States v. Lozoya*, 232 F. App'x 431 (5th Cir. 2007), which held that the "offering to sell" a controlled substance is not a "controlled substance offense" under section 4B1.2(b) of the guidelines.  As noted, the Texas statute at issue in those two cases included as an offense "offering to sell a controlled substance," which is conduct not encompassed within the language "manufacture, import, export, distribution, or dispensing of a controlled substance" or possession with intent to do so.  *Gonzalez*, 484 F.3d at 714-15.  The Arkansas statute, however, does not include "offering to sell" as an offense, so those cases are not on point.

---

[2] The Application Note for § 2L1.2 was amended effective November 1, 2008, to include an "offer to sell a controlled substance" in the definition of a "drug-trafficking crime."  *See* U.S.S.G. Appendix C, Amendment 722.

B.    RASOOL'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL ARE WITHOUT
      MERIT.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his

lawyer's performance was deficient and that the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

Proving that counsel was deficient "requires showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct.

at 2065. Because of the distorting effects of hindsight and the difficulty of viewing counsel's

representation of the client from the perspective available to defense counsel at the time of trial, "[a]

court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id*. Proving that the deficient performance prejudiced the

defense requires showing that there is a reasonable probability that, but for defense counsel's

mistakes, the result of the proceeding would have been different. *Id*. at 694, 104 S. Ct. at 2068. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"When a defendant challenges a conviction, the question is whether there is a reasonable probability

that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695,

104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's

mistakes the result would have been different, the Court must consider the totality of the evidence

before the judge or the jury. *Id*. at 59, 106 S. Ct. at 370.

The *Strickland* two-part standard also applies to ineffective assistance claims arising out of

the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

When the claim of ineffective assistance of counsel arises out of the plea process, the prejudice

element "focuses on whether counsel's constitutionally ineffective performance affected the outcome

of the plea process." *Id.* An increased prison term may constitute prejudice under the *Strickland*

standard. *Glover v. United States*, 531 U.S. 198, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001).

      1.     *The drug quantity.*

Rasool first argues that his lawyer failed to explain the details of the plea agreement and did

not explain the significance of pleading to 50 grams of a controlled substance "versus the 48 grams

that was charged in the indictment." Assuming, without deciding, that Rasool could meet the first

prong of the *Strickland* standard, it nevertheless appears from a complete review of the record that

he cannot meet the second prong of the *Strickland* standard. Count One of the First Superseding

Indictment, which was the count to which Rasool entered a plea of guilty, charged that he and others

participated in a conspiracy to distribute cocaine and crack cocaine, and that during the course of the

conspiracy more than 5 kilograms of cocaine and 50 grams or more of crack cocaine were involved.

Thus, to the extent that Rasool suggests that the indictment failed to charge him with participating

in a conspiracy involving more than 50 grams of crack cocaine, he is mistaken.[3] During the change

of plea hearing, the Court read Count One in its entirety and then asked Rasool if he had any

questions about the charges. Rasool said that he did not. Furthermore, the plea agreement stated that

Rasool and the government stipulated to an amount of crack cocaine between 50 and 150 grams and

that the base offense level of 32 was based on that quantity of crack cocaine. Rasool is obviously

literate, as is evidenced by his section 2255 petition and other pro se briefs that he has filed in this

---

[3] Rasool was also charged in four counts with distribution of crack cocaine in amounts
totaling 48.5418 grams, but those counts were dismissed pursuant to the plea agreement.

case, so he was capable of reading and understanding the plea agreement, which he signed.  Rasool

knew at the time of his change of plea that he was entering a guilty plea to a count that charged him

with a conspiracy involving more than 50 grams of crack cocaine because the plea agreement so

stated and the Court so informed him during the change of plea hearing.

> 2.     *The three-point enhancement for role in the offense.*

Rasool also argues that he was prejudiced by his attorney's failure to object to a three-point

enhancement for his role in the offense.   Rasool stipulated to that enhancement in his plea

agreement.  His attorney could not have objected at the sentencing hearing to that portion of the

presentence report because it was based on the plea agreement, which, again, Rasool signed.

> 3.     *Failures to object to the career offender enhancement.*

Rasool also argues that his attorney failed to investigate his criminal history and failed to

object to the career offender enhancement in the presentence report.

As noted above, the Eighth Circuit addressed the issue of whether Rasool's convictions for

which he received probation or a suspended sentence and held that Rasool's criminal history was

properly calculated.  Rasool argued then and argues now that one of his convictions should not have

counted in his criminal history because that conviction did not result in a period of incarceration but

instead a suspended sentence.  As the Eighth Circuit held on direct appeal, that conviction was

properly counted as a prior felony under the sentencing guidelines.  U.S. Sentencing Guidelines

Manual section 4B1.2(b) provides:

> The term "controlled substance offense" means an offense under federal or state law,
> punishable by imprisonment for a term exceeding one year, that prohibits the
> manufacture, import, export, distribution, or dispensing of a controlled substance (or
> a counterfeit substance) or the possession of a controlled substance (or a counterfeit
> substance) with intent to manufacture, import, export, distribute, or dispense.

The application note explains:

> "Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.  A conviction for an offense committed at age 18 or older is an adult conviction.

U.S. SENTENCING GUIDELINES MANUAL section 4B1.2(b) comment. (n.1).  The Eighth Circuit has specifically held that a felony drug conviction for which the defendant received a suspended sentence and a term of probation is a qualifying conviction for purpose of the 20-year mandatory minimum sentence of 18 U.S.C. § 841(b)(1)(A).  *United States v. Ball*, 499 F.3d 890, 899 (8th Cir. 2007), *vacated on other grounds*, 129 S. Ct. 2049, 173 L. Ed. 2d 1130 (2009).  Rasool has never argued that the conviction that resulted in his receiving a suspended sentence was not a conviction.  He has argued that he "was given a suspended sentence, i.e., probation/boot camp," but he does not argue that he was never convicted or that no sentence of conviction was entered.  Rasool's petition refers to his conviction in the Circuit Court of Pulaski County, Docket No. CR-95-3308.  The presentence report reflects that he entered a plea of guilty to a charge of possession of a controlled substance with intent to distribute, and he received a term of five years of imprisonment, suspended, $250 fine, and costs.  Under section 4B1.2(b) of the guidelines, that conviction is a "controlled substance offense" and therefore was properly counted toward the determination that Rasool was a career offender under section 4B1.1.

Likewise, for the reasons stated above, Rasool's argument that two of his convictions should not have been separately counted is without merit.

Rasool's defense attorney was not ineffective for failing to challenge the career offender enhancement; if she had challenged the career offender enhancement, the challenge would have been overruled, and the outcome of Rasool's sentencing would not have been changed.

4.    *Failure to discuss the nature of the charges.*

Rasool says that he attempted numerous times to discuss with his attorney the nature of the charges. He says that he repeatedly told defense counsel that he was not part of a conspiracy and that there was no common goal between him and Bobby Banks, the principal co-defendant named in the conspiracy. He points out that he discussed on the record at the change of plea hearing that he was not part of a conspiracy. A review of the change of plea hearing shows that Rasool both admitted that he was part of a conspiracy and denied that he was part of a conspiracy. He said that, although he and Banks were friends, they did not do business together; but, when the Court read from the indictment and specifically asked Rasool whether Rasool was saying that these allegations were false, Rasool said, "No sir. No, your Honor, I'm not."

The Court asked the United States Attorney to summarize the evidence that the government could prove against Rasool. The United States Attorney stated that the government could prove making 24 controlled buys from crack houses and other locations operated by Bobby Banks and others in the conspiracy. The proof would include that Rasool sold crack cocaine to a cooperating witness on four occasions at the Arkansas College of Barbering and Hair Design. Rasool sold a total of 48.5418 grams of crack cocaine during those four transactions.[4] The United States Attorney stated that other witnesses would testify that Rasool was frequently present at crack houses operated by

---

[4] These four specific transactions were the subject of four counts of the indictment charging Rasool with distribution of crack cocaine. As mentioned above, those four counts were dismissed as part of the plea agreement.

Bobby Banks and sold crack cocaine from those houses.  Those witnesses would describe Rasool as a close associate of Banks and that the two would sometimes alternate sales of crack cocaine at these crack houses.

After the United States Attorney described the evidence that could be presented, Rasool admitted that he made the unlawful sales of crack cocaine in the four transactions involving the cooperating witness; admitted that he had been to some of the crack houses but denied that he sold crack out of those houses; admitted that he talked with Bobby Banks about the prices of drugs; admitted that he followed advice that Bobby Banks gave him when he sold drugs; and admitted that he talked with Banks in order to get advice so that he could make as much as he could out of drug deals.

During the change of plea hearing, the Court said to Rasool, "you are sort of straddling the fence on me," and "you changed your story a couple of times."  When the Court asked Rasool how he was going to plead, Rasool said that he was going to plead guilty.  The Court accepted the plea.

As has already been mentioned, part of Rasool's plea agreement involved a promise to cooperate with the government.  Specifically, Rasool agreed to testify at the trial of Bobby Banks, and he did testify at that trial.  The Court has reviewed the transcript of Rasool's testimony at that trial.  Rasool testified that he had lied at his change of plea hearing when he said that he had no drug dealings with Banks and did so because he was nervous or shook up.  He testified that he had had drug dealings with Banks.  He admitted that he and Banks were both drug dealers.  He testified that he got drugs from Banks.  At one point he testified that he got drugs from Banks on only one occasion, but at another point in his testimony he said that he had received drugs from Banks on two occasions.  He testified that he kept some of his drugs at the house of Shanna Banks, who was Bobby

Banks's sister.  He testified that Bobby Banks gave him a key to Shanna Banks's house.  He testified

that at the time he started storing the drugs there, Bobby Banks was not aware of it, but Bobby Banks

later learned that he was storing drugs there.  He testified that he had seen Bobby Banks cooking

crack cocaine at Shanna Banks's house.  He testified that Bobby Banks had a crack house known as

"the boat house," and both he and Banks had sold crack out of that house.  He testified that he came

to an agreement with other persons, including Banks, that he could sell crack out of that house.  He

also testified that both he and Banks sold crack at a crack house on Park Street.

Rasool was sentenced after the Banks trial.  At Rasool's sentencing hearing, Rasool's

attorney made the following statements:

> Your Honor, Mr. Rasool is asking the Court to consider a reduction in the
> recommendation in the presentence report of up to one-half.  If the Court will recall,
> Mr. Rasool did testify against the Defendant Bobby Banks, who was the leader of this
> conspiracy.  Mr. Banks was convicted on several counts.  I believe he's set for
> sentencing.  Mr. Rasool has admitted his participation in that conspiracy, testified,
> participated in the conferences with the government to help facilitate their
> preparation of the case against Mr. Banks, and he is asking the Court to give him
> consideration for that . . . .

In his own remarks at the sentencing hearing, Rasool stated:

> First of all, your Honor, I do want to apologize to the Courts for my past actions.  I
> am guilty of the crime.  I pled guilty.  I fully cooperated.

The United States Attorney made the following comments:

> Given the fact that Mr. Rasool's guideline range is so high, we would not have an
> objection if the Court decided to impose the low end of the guideline range of 262
> months.  From that, the government is prepared to make a motion for downward
> departure pursuant to 5K of the guidelines.  The recommended departure would be
> in the amount of 40 percent, and that 40 percent reduction would take into account
> the fact that Mr. Rasool pled guilty, he admitted his participation in this conspiracy,
> he testified for the government as a witness during the trial of . . . Bobby Banks.  The
> testimony that he offered against Mr. Banks was credible, and I do believe it
> substantially assisted in securing Mr. Banks's conviction, and I anticipate that Mr.

Banks will probably be facing a life sentence, and so we do feel that Mr. Rasool has substantially assisted in that regard.  I think the 40 percent is generous to him, and I think it adequately covers his cooperation.

Although Rasool "straddled the fence" during his change of plea hearing, he did plead guilty to participating in the conspiracy.  He then testified under oath at the trial of Bobby Banks that he participated in the conspiracy with Banks.  He testified that he stored drugs at the house occupied by Banks's sister, that Banks gave him the key to that house, and that at some point Banks knew that he was storing his drugs there.  He testified that he and Banks both sold drugs out of "the boat house" and a house on Park Street.  He testified that he and others, including Banks, agreed as to who would be permitted to sell drugs out of the boat house.  He testified that he got drugs from Banks on two occasions.  After Rasool had given that testimony under oath at the trial of Bobby Banks, his lawyer used the fact that he had admitted his part in the conspiracy and testified against Banks as an argument for a reduction in his sentence.  Rasool himself reiterated at the sentencing hearing his admission that he had participated in the crime and cooperated fully, after which the United States Attorney informed the Court that Rasool had testified credibly at the trial of Bobby Banks, and that his testimony was of substantial assistance in obtaining the conviction.

In the face of this record, Rasool's current assertion that his attorney was ineffective in failing to listen when he attempted to explain that he was not part of a conspiracy rings hollow.  After Rasool had pled guilty to conspiring with Bobby Banks to distribute crack cocaine, after he testified under oath in the trial of Bobby Banks that he and Banks were co-conspirators in the distribution of crack cocaine, and after he had used that testimony to obtain a downward departure at his sentencing, the Court could not find that defense counsel was ineffective for failing to determine that Rasool was not part of such a conspiracy.

5.      *Failure to argue the disparity between crack and powder cocaine.*

Rasool next argues that his attorney was ineffective for failing to argue the disparity between crack cocaine and powder cocaine under the sentencing guidelines.  He cites *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), where the Supreme Court held that a district court has the discretion to consider the disparity between crack cocaine and powder cocaine in formulating an appropriate sentence under 18 U.S.C. § 3553(a).

Rasool was sentenced on July 7, 2006.  Less a month before the date of his sentence, the Eighth Circuit held that a district court has no authority to impose a sentence outside the sentencing guideline range because of the disparity in the guidelines for crimes involving crack cocaine as compared to crimes involving powder cocaine.  *United States v. Spears*, 469 F.3d 1166, 1176 (8th Cir. 2006).  Although the decision in *Spears* was subsequently overturned in *Kimbrough*, it was the law of this circuit on the date that Rasool was sentenced.

More importantly, Rasool's sentence was not affected by the disparity between powder cocaine and crack cocaine.  Because he was a career offender, his guideline range was determined by section 4B1.1(b) of the sentencing guidelines, not the Drug Quantity Table in section 2D1.1. Rasool was a career offender convicted of an offense for which the maximum term of imprisonment was life, so his offense level was 37.  *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(b)(A). He received a three-level reduction for acceptance of responsibility, which made the final offense level 34.  His criminal history category was VI.  The guideline imprisonment range for an offense level of 34 and a criminal history category of VI is 262-327 months.  Because of Rasool's assistance in the trial of Bobby Banks, the government moved for a downward departure of 40 percent from the low end of the guidelines.  The Court granted the government's motion and sentenced Rasool

to a term of 159 months imprisonment.  The disparity between offense levels for offenses involving crack cocaine and powder cocaine did not affect Rasool's sentence.  *Cf. United States v. Blackmon*, 584 F.3d 1115 (2009).  Rasool's lawyer was not ineffective for failing to make an argument based on the disparity between cocaine and crack cocaine in the Drug Quantity Table because that disparity did not affect Rasool's sentence.

> 6.      *Failure to object to breach of the plea agreement.*

Rasool argues that his attorney was ineffective for failing to object to the government's breach of the plea agreement in that "the government was allowed to argue for an enhanced penalty that was not part of the plea agreement [career offender provision]."  The transcript shows that the government did not argue for the career offender enhancement at the sentencing hearing.  The presentence report properly found that Rasool was a career offender under U.S. Sentencing Guidelines Manual section 4B1.1.  At the sentencing hearing, neither party argued for or against that finding in the presentence report.  The Court adopted the determination of the presentence report that Rasool's offense level under the guidelines was 34 and his criminal history category was VI so the guideline range was 262-327 months—which is to say that the Court found that Rasool was a career offender.  It is true that Rasool argued on appeal that he was not a career offender, and the government then defended the Court's ruling, but the government did not argue for the enhancement in the district court.  The plea agreement stated that the Court was not bound by its stipulations.  When the Court disregarded the stipulation in the plea agreement as to the offense level and adopted the presentence report's determination of the offense level, the government was within its rights to argue on appeal that the District Court had not committed reversible error—otherwise, the provision stating that the Court was not bound by the stipulations in the plea agreement would be meaningless.

Because there was no breach of the plea agreement, counsel was not ineffective for failing to object to a breach of the plea agreement.

   7.      *Failure on appeal.*

Finally, Rasool asserts that his lawyer was ineffective on appeal, though he does not specify what he thinks his lawyer did or did not do that fell below the *Strickland* standard. The Court notes that the Eighth Circuit independently reviewed the record under *Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988), and found no non-frivolous issues. Consequently, the Court cannot find that counsel was ineffective on appeal nor that the outcome of the appeal might have been different had counsel performed differently.

## CONCLUSION

For all of these reasons, the Court finds that the petition filed by Curtis Waheed Rasool pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence, is without merit. The petition is dismissed. Rasool has failed to make a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) and Rule 11(a) of the Rules Governing § 2255 Proceedings.

IT IS SO ORDERED this 17th day of February, 2010.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE